In re FRANK LENSKI, Petitioner, v. MARTIN O'-
BRIAN, Chief of Police of the Metropolitan Police
Force of the City of St. Louis, JOHN HANNEGAN,
Chief of the Detective Bureau of the Metropolitan
Police Force of the City of St. Louis, and PETER
REYNOLDS, Captain in Charge of and Command-
ing the Eleventh District of the Metropolitan Police
Force of the City of St. Louis, Respondents.

St. Louis Court of Appeals.   Opinion Filed May 10, 1921.

1. **CRIMINAL LAW: Illegal Arrests: No Common-law Offenses
Against United States: Violation of Federal Statutes: Powers of
Congress.** There are no common-law offenses against the United
States, and Congress alone has power to prescribe what shall be
deemed an offense, and to provide the method of arrest, prosecu-
tion, and punishment of any act which it may designate as an
offense, and therefore the right or power to make arrests for a
violation of a federal statute must be authorized by some act of
Congress; otherwise, an arrest is illegal.

2. **———: Federal Statutes: Congress May Confer on State Officers the
Duty to Enforce.** Authority to enforce a federal statute or to ex-
ecute a duty imposed under an act of Congress may be conferred
upon state officers as such, and such officers may execute the same
unless prohibited by the Constitution or the statutes of the state.

3. **———: ———: National Prohibition Act: Arrests: Only Author-
ized State Officers Have Power to Issue Warrants After Complaint
Filed.** Section 2, title 2, of the National Prohibition Act, spe-
cifically provides that section 1014 of the Revised Statutes of the
United States (Sec. 1674, U. S. Comp. St.), shall be applicable in
the enforcement of the act, consequently the only state officers
who are authorized to make arrests are those who are specifically
designated in said section 1014, each of which said state officers is
clothed with power to issue warrants for arrests; and before any
such state officer is authorized to issue a warrant for the arrest of
a person charged with the violation of any of the provisions of the
National Prohibition Act of the United States, some person author-
ized under the law of the State where the arrest is sought to be
accomplished must, agreeably to the statutes of such State, file a
complaint before such authorized officer from whom the warrant
is sought.

4. ———: ———: ———: ———: Police Officers Without Authority to Make Arrests Unless Armed with Warrant. Police Officers, such as the members of the metropolitan police force of the city of St. Louis, have no authority to make an arrest for violation of the National Prohibition Act, unless such police officers are armed with a warrant issued by one of the officers mentioned in said section 1014, Revised Statutes of the United States (section 1674, U. S. Comp. St.) charging said person with having violated said act.

5. HABEAS CORPUS: Jurisdiction: National Prohibition Act: Petitioner Illegally Held by State Officers: Jurisdiction in State Court. In a *habeas corpus* proceeding, where the petitioner is not being held under the authority or claim and color of authority of the United States, by any officer of that government, but held on arrest by police officers of the city of St. Louis, for alleged violation of the National Prohibition Act, without warrant for the arrest, the jurisdiction is not in the federal court, but in the state court, and such holding without warrant being illegal, the petitioner should be discharged from custody.

ALLEN, P. J., dissents.

*Habeas Corpus.* Original Proceeding.

PETITIONER DISCHARGED.

*Vance J. Higgs* for petitioner.

*Chas. H. Daves* and *Oliver Senti* for respondents.

BECKER, J.—Petitioner averring his wrongful detention by Martin O'Brien, Chief of Police, John Hannegan, Chief of the Detective Bureau, and Peter Reynolds, Captain in charge of and commanding the Eleventh District, of the Metropolitan Police Force of the City of St. Louis, asks us to inquire, by our writ of *habeas corpus,* into the legality of such detention.

Petitioner alleges in his application here that on the 26th of February, 1921, he was forcibly taken into custody by one Collard and one Kelly, police officers of the Metropolitan Police Force of the city of St. Louis upon the charge of having violated a certain law known as the National Prohibition or Volstead Act, and that the petitioner was immediately thereafter placed in the

holdover of the said police department of the city of St. Louis, where he is now restrained of his liberty; that at the time the petitioner was arrested and placed in said holdover, as aforesaid, the said police officers, nor either of them, possessed a warrant for the arrest of the petitioner issued by any court of the United States of America, or of the State of Missouri, or any other legal authority whatever authorizing and empowering such police officers or either of them to arrest the petitioner, and it is further set up in said application that at the time of the filing thereof the petitioner was held in the said holdover without a warrant of any kind or character whatever having been issued for his arrest as aforesaid; that he is held solely upon the charge of "being suspected of violating National Prohibition Act—held for Federal authorities." Said application further states that said imprisonment is illegal in that, that the petitioner is being held without due process of law.

Respondents' return denies that petitioner is or ever was by them restrained of his liberty unlawfully and avers that they detained his body for the following reasons, to-wit:

"That on Saturday evening, February 26, 1921, at about 10:30 o'clock members of the Metropolitan Police Force of the city of St. Louis arrested the said Frank Lenski for violating the laws of the United States in that said Frank Lenski while in and upon the premises of a certain soft drink parlor or saloon, under his management and control, had in his possession a bottle of intoxicating liquor commonly called whiskey, which said intoxicating liquor contained in excess of one-half per cent. of alcohol by volumn; that said Frank Lenski was arrested for the purpose of taking him before the proper officers of the Government of the United States and applying for a warrant charging him with violating the laws of the United States as aforesaid; that said violation of the laws of the United States was committed in the presence of the officer by whom relator was arrested; that the office of the United States District Attorney

and of the United States Commissioner were not open during the night of February 26th, nor were said offices open thereafter until Monday morning, February 28th; that the relator was upon his arrest taken to the police station to be there held until the office of said United States officials was open so that he could be delivered to the proper officials of the Government of the United States to be dealt with according to law unless sooner released on bond; that on Monday, February 28, 1921, and the first day that said offices were open subsequent to the arrest of the relator, application for a federal warrant against relator was made, which said application has been taken under advisement by the United States District Attorney pending the outcome of the proceeding in this court for the relator's discharge.''

The question in this case is whether a police officer of the Metropolitan Police Force of the city of St. Louis has authority, without a warrant, to make an arrest for violation of the National Prohibition or Volstead Act.

As arrests of this nature are quite frequent, and there have seemingly been no decisions on the point herein presented, its proper determination becomes a matter of importance. If the practice pursued in this case is not warranted by law its continuance should not be permitted, when properly challenged; especially in a matter effecting personal liberty.

While it is universally conceded that the very life of our country, its government and its citizens depend in great measure upon the prompt apprehension, speedy trial and punishment of wilful offenders, it is equally important that the citizens should not be deprived of those guarantees which the law affords for securing their personal rights and liberty.

In a recent case, Gouled v. The United States,—U. S.—, Mr. Justice CLARKE, speaking for the United States Supreme Court, with reference to amendments four and five to the United States Constitution, said:

''It would not be possible to add to the emphasis with which the framers of our Constitution and this

court (in Boyd v. United States, 116 U. S. 816, in Weeks v. United States, 232 U. S. 383, and in Silverthorne Lumber Co. v. United States, 251 U. S. 385) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is: that such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property;' that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen,—the right, to trial by jury, to the writ of *habeas córpus* and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly over-zealous executive officers.

"In the spirit of these decisions we must deal with the questions before us."

What we rule herein must be taken as subject to the limitations of the provisions of section 26, of title II of the National Prohibition Act, which relates to the duty of officers of the law to seize any and all intoxicating liquor found being transported contrary to law, which section, however, under the facts in the case has no application here.

There are no common law offenses against the United States (U. S. v. Buttor, 108 U. S. 199; U. S. v. Eaton, 144 U. S. 677) and Congress alone has power to prescribe what shall be deemed an offense, and to provide the method of arrest, prosecution and punishment of any act which it may designate as an offense. Therefore the right or power to make arrests for a violation of a Federal statute must be authorized by some act of Congress, otherwise an arrest is illegal.

The only general act of Congress which authorizes anyone other than Federal officers to arrest a person for the violation of a law of the United States is section 1014 of the Revised Statutes of the United States, vol. 2, Fed. Stat. Ann. p. 321 (Sec. 1674, U. S. Comp. Stat. 1913), which section reads as follows:

"Sec. 1014. (Offenders against the United States, how arrested and removed for trial). For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of a circuit court to take bail, or by any chancellor, judge of a Supreme or Superior Court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any State where he may be found, and agreeably to the usual mode of process against offenders in such State, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizances of the witnesses for their appearance to testify in the case. And where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."

And section 2, title 2 of the National Prohibition Act among other things specifically provides that "section 1014 of the Revised Statutes of the United States is hereby made applicable in the enforcement of this Act."

That authority to enforce a Federal statute, or to execute a duty imposed under an act of Congress may be conferred upon State officers as such, and that such officer may execute the same unless prohibited by the constitution or statutes of the State is no longer open to question. [Priggs v. Pennsylvania, 16 Pet. 539, l. c.

622; Robertson v. Baldwin, 165 U. S. 275; Dallemagne v. Moisan, 197 U. S. 169, l. c. 174.]

In our view it is apparent that the only State officers who are authorized to make arrests are those who are specifically designated in said section 1014, each of which said State officers is clothed with power to issue warrants for arrest. It is self-evident that it is not intended that the State officers mentioned in said section 1014 shall themselves do the actual arresting of the offenders, but that said officers, in their official capacity, upon proper showing "agreeable to the usual mode of process against offenders in such State," shall issue the necessary warrant for the arrest of any offender who shall have committed a crime or offense against the United States. And before any such State officer mentioned in said section 1014 is authorized to issue a warrant for the arrest of a person charged with the violation of any of the provisions of the National Prohibition Act of the United States, some person authorized under the law of the State where the arrest is sought to be accomplished must, agreeably to the statutes of such State, file a complaint before such authorized officer from whom the warrant is sought.

While we have not been cited, nor has our own investigation found any cases directly holding that arrests under the United States Statutes of the kind and character before us, can be made only upon warrant, it does appear from many cases inferentially at least, that there is no authority to make such arrest, except in rare instances, without a warrant. [Sec. U. S. v. Fuellhart, 106 Fed. Rep. l. c. 913.] From among such cases we take occasion to quote from In re Rule of Court, 3 Woods, 502, in which, speaking on the great inconvenience that was being caused in that district by the arrest of persons charged with offenses against the revenue laws on warrants based upon insufficient evidence, it is said:

"One cause of this evil seems to be the fact that warrants are issued upon the affidavit of some officer, who, upon the relation of others, whose names are not

disclosed, swears that upon information he has reason to believe and does believe, the person charged has committed the offense charged. The district judge, not being satisfied that this is a sufficient ground for issuing a warrant of arrest, is desirous of my advise in the matter. After an examination of the subject we have come to the conclusion that such an affidavit does not meet the requirements of the Constitution, which by the fourth article of the amendments decrees that the right of the people to be secure in their persons, houses, papers and effects against unreasonable search and seizure shall not be violated; and that no warrants shall issue but upon probable cause, supported by oath or affirmation, describing the place to be searched and the persons to be seized. It is plain from this fundamental annunciation as well as from the books of authority on criminal matters in the common law, that the probable cause referred to, and which must be supported by oath or affirmation, must be submitted to the committing magistrate himself, and not merely to an official accuser, so that he, the magistrate may exercise his own judgment on the sufficiency of the ground shown for believing the accused person guilty; and this ground must amount to a probable cause of belief or suspicion of the person's guilt. In other words, the magistrate ought to have before him the oath of the real accuser presented either in the form of an affidavit or taken down by himself by personal examination, inserting the facts on which the charge is based, and on which the belief or suspicion of guilt is founded. The magistrate can then judge for himself and not trust to the judgment of another, whether sufficient and probable cause exists for issuing a warrant.''

"It is possible that by exercising this degree of caution some guilty persons may escape public prosecution but it is better that some guilty ones should escape than that many innocent persons should be subjected to the expense and disgrace attendant upon being arrested upon a criminal charge, and this was undoubtedly the

beneficient reason upon which the constitutional pro
vision referred to was founded.''

And Judge BRADLEY, the writer of the said opinion
then lays down the rule for that circuit that ''no war-
rant of arrest shall be issued by any commissioner upon
mere belief or suspicion of the persons making such
charge; but only upon probable cause, supported by
oath or affirmation of such person, in which shall be
stated the facts within his own knowledge constituting
the grounds for such belief or suspicion.'' [See also In
re Dana, 68 Fed. Rep. l. c. 895; U. S. v. Baumert, 179
Fed. Rep. l. c. 739; U. S. v. Tureand, 200 Fed. Rep. 621.]

In the case of U. S. v. Baumert, 179 Fed. Rep. l.
c. 742, we find the following language therein, referring
to said section 1014, Revised Statutes of United States:
''   .  .  .  That section relates to preliminary ex-
amination before a justice, judge, or United States
commissioner for the purpose of issuing a warrant and
holding to bail for appearance at court to answer to an
indictment presented by a grand jury or to an informa-
tion filed by the United States attorney.  .  .  .''

In light of what we have said we are of the opinion
and so hold that police officers, such as the members of
the Metropolitan Police Force of the city of St. Louis,
have no authority to make an arrest for a violation of
any of the provisions of the National Prohibition Act,
unless such police officers are armed with a warrant
issued by one of the officers mentioned in said section
1014, charging said person with having violated said
Act.

Having come to the conclusion that the petitioner
is not being held under the authority or claim and color
of the authority of the United States by any officer of
that government, it follows that jurisdiction in the in-
stant case is not in the Federal court but in the State
court.   [Tarble's Case, 13 Wall 397; Ableman v. Booth,
21 How. 506.]   And in this connection we take occasion
to advert to the recent case of Ex parte William Smith,
in the United States District Court for the Eastern

Division of the Eastern District of Missouri, in which petitioner having been arrested under an oral direction and request, as it was alleged, of the United States District Attorney and of the Special Assistant Attorney General on the charge of violating the provisions of the Volstead Act, sought his discharge by a writ of *habeas corpus*.. Judge FARIS in that case ruled that the United States District Court had no jurisdiction, and in the memorandum filed in the case, among other things, said: "I am constrained to believe that ample jurisdiction inheres in the State courts in this case, absent a warrant or committment from the federal judge or commissioner, or such warrant or committment for violation of some federal statute issued by a judicial officer of the State (see sec. 1674, Comp. Statutes). I cannot be led to believe that a mere arbitrary entry upon the blotter that petitioner is being held for the violation of a federal statute, without more, either shears the State courts of jurisdiction over its own officers, or that such entry confers jurisdiction over such officers upon this court."

The petitioner should be and he is hereby ordered discharged from custody as prayed. *Nipper, Special Judge,* concurs. *Allen, P. J.,* dissents. *Daues, J.,* not sitting.