### UNITED STATES v. BASILIKO.
#### No. 140.

Municipal Court of Appeals for the District of Columbia.

Dec. 29, 1943.

---

Charles E. Ford, of Washington, D. C. (H. Clifford Allder, of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

The Government appeals from an order quashing a warrant of arrest in a disorderly house case. Defendant's motion to quash charged that the warrant was unauthorized, issued in violation of law, defective and void. The trial judge after hearing, decided that the affidavit on which the warrant was issued was insufficient, granted the motion to quash, and discharged the defendant.

Two questions are presented on this appeal: (1) The question of jurisdiction, involving also the appealability of the order, and (2) the sufficiency of the affidavit upon which the warrant was based.

## I. Jurisdiction

By the Act creating this Court[1] it was provided that "any party aggrieved by any final order or judgment of The Municipal Court for the District of Columbia * * * may appeal therefrom as of right" to this Court. The question is whether the quoted section extends to the benefit of the United States in such a situation.

By the great weight of authority the prosecution in a criminal case is not entitled to an appeal, in the absence of statutory authority.[2] Such was the rule at one time in this jurisdiction.[3] But that rule was altered by statute in 1901, as follows (Code 1940, § 23—105): "In all criminal prosecutions the United States or the District of Columbia, as the case may be, shall have the same right of appeal that is given to the defendant, including the right to a bill of exceptions: Provided, That if on such appeal it shall be found that there was error in the rulings of the court during a trial, a verdict in favor of the defendant shall not be set aside."

And the new right of appeal conferred by that statute was recognized in subsequent decisions,[4] though limited under the

Ray L. Jenkins and John P. Burke, Asst. U. S. Attys., both of Washington, D. C. (Edward M. Curran, U. S. Atty., and John B. Diamond, Asst. U. S. Atty., both of Washington, D. C., on the brief), for appellant.

1 Code 1940, § 11—772.

2 See cases collected in 24 C.J.S., Criminal Law, § 1659, page 256, note 57.

3 United States v. Surratt, 6 D.C. 306; United States v. Phillips, 5 Mackey 250, 16 D.C. 250; United States v. Ainsworth, 3 App.D.C. 483.

4 United States v. Hayman, 24 App. D.C. 158; District of Columbia v. Hauf, 33 App.D.C. 197; United States v. Cella,

terms of the statute to cases which had not proceeded to verdict of finding of acquittal.[5] With that background of statute and decision, we must decide whether the order itself is appealable.

■ Defendants in criminal cases do not ordinarily have the right to an independent appeal from the ruling on such (or similar) motions. The reason is apparent. Such a motion is usually a preliminary, sometimes a dilatory tactic.[6] When a defendant is confronted with an adverse ruling on such a motion it means only that he must go to trial. He does not lose his right to object to evidence improperly seized.[7] He still reserves his right on the trial to present his legal contentions to the court, and to make his showing on the facts to the jury. Equally important, he carries with him his right to have the entire case, including the interlocutory ruling, reviewed on appeal.

■ The situation is different when such a motion is decided against the government. There is no later stage of the case at which the matter may be re-presented, for the case is at an end. The prosecution is halted and the defendant is discharged. Obviously the only remedy is by appeal. We think these considerations point to a ruling that in the circumstances here presented the order is properly subject to appellate review.

## II. Sufficiency of the Affidavit

■■ In testing the sufficiency of the affidavit to justify the issuance of a warrant we are of course answering the important question as to whether "probable cause" has been shown under the IVth Amendment. We look first to this language of the Supreme Court in Dumbra v. United States, 268 U.S. 435, 45 S.Ct. 546, 549, 69 L.Ed. 1032: "In determining what is probable cause, *we are not called upon to determine whether the offense charged has*

*in fact been committed.* We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated. on the premises to be searched, and if the apparent facts set out in the affidavit are such *that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant.*" (Italics supplied.)

We take this to mean that the evidence tendered in support of the issuance of a warrant need not be so strong as to justify ultimate conviction.[8] We also take it to mean that while the burden is on the government to justify the issuance of the warrant,[9] the showing need only be of such a nature as to establish in the mind of "a reasonably cautious person, on the strength of the then known facts"[10] that the law had been violated.

Here the showing was by affidavits. The trial judge took some testimony on the motion, but that testimony did not present any important factual disputes and left the record in such state that the question of probable cause as here presented, becomes one of law.[11] In such a situation an appellate court is as competent as the trial court to consider documentary evidence and determine its legal effect.[12]

Guided by those tests in our study of the record, we are led to a different conclusion than that reached by the trial judge.

There was executed and presented to the judge who issued the warrant a printed form of "Affidavit of Complaint" which contained only the naked conclusion of the police officer that the defendant was maintaining a disorderly house. Since it contained no recitals of fact it was completely ineffectual and could not have sufficed as a basis for a warrant.[13]

---

37 App.D.C. 423, certiorari denied 223 U. S. 728, 32 S.Ct. 526, 56 L.Ed. 633; District of Columbia v. Horning, 47 App.D.C. 413.

5 United States v. Evans, 213 U.S. 297, 29 S.Ct. 507, 53 L.Ed. 803; United States v. Evans, 30 App.D.C. 58; District of Columbia v. Burns, 32 App.D.C. 203; District of Columbia v. Kendall, 57 App. D.C. 271, 20 F.2d 287.

6 United States v. Rosenburgh, 7 Wall. 580, 74 U.S. 580, 19 L.Ed. 263; Cogen v. United States, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275; Darnall v. United States, 33 A.2d 734.

7 See discussion of this procedure and citations in Darnall v. United States, supra.

8 People v. McGirr, 39 Misc. 471, 80 N. Y.S. 171.

9 United States v. Keleher, 55 App.D. C. 132, 2 F.2d 934.

10 Shore v. United States, 60 App.D.C. 137, 49 F.2d 519, 521.

11 Maghan v. Jerome, 67 App.D.C. 9, 88 F.2d 1001.

12 Fleming v. Palmer, 1 Cir., 123 F.2d 149.

13 Darnall v. United States, supra, and cases there cited.

But that was not all. Attached to the affidavit just described there was a second affidavit of the same officer in which detailed information was set out.[14] Included among his allegations were these: That he had lived in the hotel as a guest for about two weeks and continued to frequent the place for a few days thereafter; that on various occasions he personally saw two clerks (one a brother of defendant, and himself defendant in a companion case on the same charge) assign rooms to various couples, men and women, without baggage; that he saw this happen as many as 15 or 20 times in a single evening, and that such couples left the hotel an hour or so afterwards; that on several occasions the elevator operator agreed that he could readily secure girls for him for purposes of prostitution, named the fee and stated that such fee would be divided between prosstitute and procurer; that on one occasion he purchased from the elevator operator whiskey which he always had available in the hotel; that he had also repeatedly seen the same employee deliver whiskey to other guests; that in his presence the clerk advised men and women to sign the register as "Mr. and Mrs." or "wife"; that he had seen rooms rented to more than one couple in the same night; and that he had engaged in "crap" games with employees, including the chef of the hotel.

Defendant insists that these allegations did not make out "probable cause." He cites a number of cases.[15] These we will not discuss in detail; we say only that in them we find no conflict with what we here decide.

■■ The sufficiency of such a showing is to be determined by practical, rather than technical, considerations.[16] Taking the allegations together in their reasonable and natural import, it is plain that they recite a set of circumstances more consistent with a hypothesis of guilt than with one of innocence. Here was considerably more than a police-officer's mere suspicion or conclusion;[17] here was no mere collection of statements plucked from the realm of information and belief;[18] here was no vague or hearsay showing.[19] Here was a set of direct recitals of fact which should fairly indicate to "a reasonably discreet and prudent man" that the offense had in fact been committed.

It follows that there was "probable cause", that the warrant was properly issued and that it should not have been quashed.

Reversed and remanded for further proceedings consistent with this opinion.

Ray L. Jenkins and John P. Burke, Asst. U. S. Attys., both of Washington, D. C. (Edward M. Curran, U. S. Atty., and John B. Diamond, Asst. U. S. Atty., both of Washington, D. C., on the brief), for appellant.

Charles E. Ford, of Washington, D. C. (H. Clifford Allder, of Washington, D. C., on the brief), for appellee.

---

[14] The judge who passed on the motion to quash specifically found as a fact that the issuing judge had read and considered both affidavits before making the judicial determination that probable cause existed.

[15] Baumboy v. United States, 9 Cir., 24 F.2d 512; Schencks v. United States, 55 App.D.C. 84, 2 F.2d 185; United States v. Carter, 231 U.S. 492, 34 S.Ct. 173, 58 L.Ed. 330; United States v. Gokey, D.C. N.D. N.Y., 32 F.2d 793; United States v. Keleher, 55 App.D.C. 132, 2 F. 2d 934; United States v. Ruroede, D.C. S.D. N.Y., 220 F. 210; United States v. Hamilton, 109 U.S. 63, 3 S.Ct. 9, 27 L.Ed. 857.

[16] Beard v. United States, 65 App.D. C. 231, 82 F.2d 837.

[17] Darnall v. United States, supra.

[18] Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; Schencks v. United States, supra.

[19] Baumboy v. United States, supra.